UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROCHESTER LABORERS' WELFARE-S.U.B.
FUND by Robert Brown as Chairman, and
Daniel Hogan as Secretary, et al.,

           DECISION AND ORDER

           Plaintiffs,

           15-CV-6167L

           v.

JOURNEE CONSTRUCTION, INC., et al.,

           Defendants.
_____

**INTRODUCTION**

Plaintiffs, the Rochester Laborers' Welfare-S.U.B. Fund, Rochester Laborers' Pension Fund, Rochester Laborers Annuity Fund, Rochester Laborers' Apprentice and Training Fund, and the International Union of North America, Local Union No. 435, (collectively "plaintiffs") by their principals, commenced this action against defendants Journee Construction, Inc. and its officer Orville P. Dixon ("defendants") to enforce the provisions of a collective bargaining agreement ("CBA"). This action is brought pursuant to Section 1132 of the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq., and the Labor Management Relations Act, 29 U.S.C. §185 et seq. Plaintiffs seek a money judgment against defendants, including compensatory and liquidated damages, interest, costs and attorneys' fees, for failure to timely remit fringe benefit contributions and deductions that were owed to the plaintiffs under the CBA, and for breach of fiduciary duty by the individual defendant. (Dkt. #1).

Defendants were served with process on or about April 18, 2015 (Dkt. #4) but failed to timely appear or to answer the complaint. The Clerk entered an initial Entry of Default on July 16, 2015. (Dkt. #7). Plaintiffs moved for a default judgment pursuant to Fed. R. Civ. Proc. 55(b)(2) on December 2, 2015. (Dkt. #8). Defendants appeared for the first time on or about January 4, 2016, opposing the motion for default judgment and seeking to vacate the entry of default and extend their time to answer the complaint. (Dkt. #14). On July 12, 2016, (Dkt. #17) the Court denied the motion for default judgment, vacated the entry of default, and allowed defendants until July 27, 2016 to answer the complaint. Defendants failed to file an answer, and on August 22, 2016, the Clerk filed a second Entry of Default. (Dkt. #19).

Plaintiffs now move, once again, for a default judgment pursuant to Fed. R. Civ. Proc. 55(b)(2). Plaintiffs seeks $51,844.12, plus interest, in damages against Journee, and $31,753.93, plus interest, in damages against Dixon. (Dkt. #31). For the reasons set forth below, that motion is granted.

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

According to the complaint, between September 2013 through March 2014, Journee performed work for plaintiffs under a Project Labor Agreement ("PLA"). The PLA incorporated the plaintiffs' CBA, which set forth the rates at which Journee was required to remit contributions and deductions to the plaintiffs. The PLA and CBA provided that if contributions were not timely remitted, Journee would be responsible to pay, inter alia, the amount due, plus interest and liquidated damages. They further provided that in the event that Journee violated its obligations, it would be liable for audit fees related to plaintiffs' attempts to collect the debt.

There appears to be no dispute that defendants did not timely remit, and have never paid, a portion of the contributions and deductions owed to the plaintiffs under the CBA. Plaintiffs

2

allege that they are entitled to the full amount of unpaid contributions, plus interest, liquidated damages, costs and attorneys' fees. Plaintiffs have also asked that Journee be ordered to provide its books and records for the period of March 24, 2014 to date, and that Journee be required to pay for additional auditing to be performed to cover that time period, in order to assess what additional damages may have accrued.

## MOTION FOR DEFAULT JUDGMENT

Initially, in order to secure a default judgment, a party must first secure the clerk's entry of default by demonstrating, by affidavit or in some other manner, that the opposing party is in default. *See* Fed. R. Civ. Proc. 55(a); *J&J Sports Prods. v. Bimber*, 2008 U.S. Dist. LEXIS 39174 at *2 (W.D.N.Y. 2008). Once a default has been entered, the Court will accept as true the allegations of the complaint that establish the defendant's liability, and will carefully scrutinize those relating to the amount of damages. *Id.*, 2008 U.S. Dist. LEXIS 39174 at *3-*4 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

The Clerk has entered defendants' default and plaintiffs have shown that they are entitled to judgment against defendants. However, the Court cannot merely accept at face value that plaintiffs are entitled to the particular relief they seek. Rather, "judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court. . . . Indeed, a defendant's default does not in itself warrant a court in entering a default judgment [because] there must be a sufficient basis in the pleadings for the judgment entered." *Bianco v. Seaway Indus. Services, Inc.*, 2004 U.S. Dist. LEXIS 7368 at *4 (W.D.N.Y. 2004) (quoting *Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 95-96 (2d Cir.1993)). Furthermore, the Second Circuit cautions that "defaults are generally disfavored and are reserved for rare occasions," and when there is doubt as to the propriety of default relief, "the doubt should

3

be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d 90 at 96. The Court, therefore, must evaluate the merits of plaintiffs' claims and the relief they seek. *See Wagstaff-el v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir.1990).

I have reviewed the allegations in the complaint, as well as the terms of the underlying agreements, in detail. I accept as true plaintiffs' allegations that Journee has failed to remit the required fringe benefit contributions and deductions owed to plaintiffs, and that Dixon's failure to fulfill his fiduciary duty to oversee timely payment resulted in a loss of investment income to plaintiffs. I have examined plaintiffs' documentary evidence in support of their claims, including copies of the CBA and PLA, affidavits supporting plaintiffs' calculations of amounts due, interest and liquidated damages, affidavits supporting the claimed prior audit costs, and affidavits concerning attorneys' fees and costs, all of which substantiate the plaintiffs' damages claims.

In response to plaintiffs' instant motion, defendants freely acknowledge that "funds were owed" (Dkt. #36 at 3; Dkt. #36-1 at ¶11), but dispute the amount, alleging that some of the funds sought are for non-union employees to whom contributions could be paid directly.[1]

Defendants' submissions are unaccompanied by supporting evidence in admissible form, and fail to credibly challenge plaintiffs' claims or their damages calculations. To the extent that defendants claim that the six employees at issue signed waivers agreeing to receive their contributions directly, they have made no showing that they met the conditions necessary under the PLA to avoid the payment of contributions to the plaintiffs (e.g., that defendants paid the contributions to the employees in cash, or remitted contributions to the defendants' own bona fide employee plans). (Dkt. #31, Kuntz Aff., ¶¶11-12). I am convinced that plaintiffs have established their claims that the defendants failed to make the required contributions and that

---

1 The Court notes that although defendants' former counsel, Chyrel Natalie Hall, was suspended from practice in or about December 2017, the instant motion had already been fully briefed by that time.

plaintiffs are entitled to default judgment on those claims, along with interest, liquidated damages, costs and attorneys' fees, pursuant to the CBA's Trusts and Collections Policy. I have reviewed the plaintiffs' application for attorneys fees, including time records, and find that the lodestar rate requested, which averages $300/hour of senior counsel time and $165/hour of paralegal time, is reasonable and consistent with prevailing rates in the community for attorneys of comparable skill and experience. *See e.g.*, *Dunda v. Aetna Life Ins. Co.*, 2016 U.S. Dist. LEXIS 125946 (W.D.N.Y. 2016) (hourly rate of $320/hour for experienced counsel in an ERISA case is reasonable and appropriate). The Court also notes that the amount of time (54.4 hours) expended by counsel and counsel's staff in prosecuting this matter is reasonable. These efforts included, in substantial part, drafting the complaint, obtaining two entries of default, performing damages calculations, and preparing memoranda of law and affidavits to support two motions for default judgment, both of which were opposed.

Plaintiffs have also requested an order requiring Journee to submit to an audit from March 24, 2014 to date. It is well settled that a benefit fund trustee has the right to audit contributing employers. *See e.g.*, *Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 569 (1985). The CBA's Trust and Collections Policy likewise requires Journee to provide on-demand access to plaintiff of its payroll records, hours reports, and other information necessary to assess whether Journee is making full and proper reports and payments to plaintiffs. Plaintiffs allege that Journee has not produced its books and records since March 24, 2014. Their request that Journee do so is therefore granted.

## CONCLUSION

Plaintiffs' motion for default judgment (Dkt. #31) is granted. As against Journee, plaintiffs are awarded judgment in the amount of $51,844.12 for unpaid fringe benefit contributions, deductions, interest through April 1, 2017, liquidated damages, audit fees, attorneys' fees and costs, plus interest thereon from April 1, 2017 at the statutory rate of 2.09% per annum pursuant to 28 U.S.C. §1961(a), which is $1,086.51, for a total of $52,930.63. As against Dixon, plaintiffs are awarded judgment in the amount of $31,753.93 in unpaid fringe benefit contributions, interest through April 1, 2017, audit fees, attorneys' fees and costs, plus interest thereon from April 1, 2017 at the statutory rate of 2.09% per annum, which is $665.48, for a total of $32,419.41. The Court notes that both damages totals include the same $10,065.24 portion of the unpaid fringe benefit contributions, audit fees of $4,832.58, and $15,104.38 in attorneys fees and costs, plus interest on those amounts, for which the defendants are jointly and severally liable.

Plaintiffs' request for an audit is also granted, and Journee is directed to produce its relevant books and records to plaintiffs for audit for the period beginning March 24, 2014, and to bear the costs of the same. Defendants have also filed a motion to seal certain documents (Dkt. #37), but have failed to exchange copies of those documents with counsel or the Court, or to explain why sealing is necessary. That motion is accordingly denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 2, 2018.